IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUDITH A. STEFFE and MICHAEL STEFFE, | : | Civil No. 1:21-CV-01605 |
| Plaintiffs, | : | |
| v. | : | |
| WALMART SUPERCENTER #2023 and WALMART INC., | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is a motion for summary judgment filed by Defendants Walmart Supercenter #2023 and Walmart Inc. (collectively, "Walmart"). (Doc. 24.) Mrs. Steffe slipped in a puddle of water in Walmart's bathroom and sustained injuries from that fall. In its motion for summary judgment, Walmart argues that there is no material issue of fact and that it is entitled to judgment as a matter of law. For the reasons that follow, the court will grant Walmart's motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff Judith A. Steffe ("Mrs. Steffe") went to Walmart Store Number 2023 in Lebanon, Pennsylvania on the morning of July 24, 2019, with her mother

---

[1] In considering Defendants' motion for summary judgment, the court relied on the uncontested facts, or where the facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to the nonmoving party in accordance with the relevant standard for deciding a motion for summary judgment. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

1

in order to buy groceries. (Doc. 24, pp. 3, 4; Doc. 32-2, p. 1.)[2]  Upon arrival, Mrs. Steffe and her mother both went directly to the women's restroom. (Doc. 24, p. 4; Doc. 32-2, p. 1.)  After using the restroom, Mrs. Steffe went to the sink area and washed her hands. (Doc. 24, p. 4; Doc. 32-2, p. 1.)  As she turned to get a paper towel, she slipped in a puddle of water and fell to the ground. (Doc. 24, p. 4; Doc. 32-2, p. 1.)

At her deposition, Mrs. Steffe testified that she walked past the sink area twice but did not observe any water on the floor prior to her fall. (Doc. 24, pp. 4–5.)  Mrs. Steffe also testified that she did not know the origin of the puddle, nor how long the water had been there. (*Id.* at 5.)  Mrs. Steffe testified that the water was not dirty, and there were no footprints tracking through the puddle. (*Id.*)  She further testified that there were no Walmart employees in the bathroom prior to her fall, and there was no wet floor sign or any other indication that the floor would be wet. (*Id.*)

Melissa Berry ("Berry"), the co-manager at the Lebanon store at the time of Mrs. Steffe's fall, was also deposed.  Berry testified that, after Mrs. Steffe's fall, she observed water on the floor that was approximately four to five inches in diameter. (Doc. 32-2, p. 2.)  Berry also testified to the bathroom inspection and maintenance protocols in effect at the time, specifically that maintenance cleaned

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

the bathrooms nightly.  (*Id.* at 55.)  In response to a question regarding whether Berry reviewed the bathroom maintenance log, she responded:

> I don't think so.  I think when—I'm almost positive when Jared[3]—because I thought maybe maintenance was in there, were they mopping, was overnight in there, like, and they-- they maybe didn't mop up some water.  I think I believe Jared looked on camera.  I don't know if there's --I don't think there's a paper log.  I don't recall there being a log that day.

(*Id.* at 52–53.)

Berry also testified that, other than nightly cleaning, issues in the bathroom were addressed as they were reported to store management, either by customers or by employees using the restroom.  (*Id.* at 55.)  Berry stated that management received one to two reports per month of wet floors in the bathroom, and one to two reports per week regarding other types of issues on the bathroom floor.  (*Id.* at 58–59.)

Mrs. Steffe and her husband, Michael A. Steffe ("Mr. Steffe"), initiated this action by filing a praecipe for writ of summons in the Court of Common Pleas of Lebanon County on May 28, 2021.  (Doc. 1-2, p. 2.)  After the entry of a rule to file a complaint on July 14, 2021, Plaintiffs filed a three-count complaint on August 30, 2021, alleging negligence against Walmart's corporate entity,

---

[3] "Jared" refers to Mr. Jared Anderson, identified by Ms. Berry as the Walmart employee responsible at the time for compiling incident reports.  (Doc. 32-1, pp. 36-37.)

negligence against Walmart Store #2023, and loss of consortium on behalf of Mr. Steffe.  (Doc. 1-4.)

Walmart filed a notice of removal in this court on September 16, 2021, based on diversity jurisdiction.  (Doc. 1.)  Thereafter, on September 23, 2021, Walmart filed an answer.  (Doc. 3.)  Walmart filed the instant motion for summary judgment, accompanied by a brief in support and statement of facts on February 7, 2023.  (Docs. 24, 25, 26.)  Following a joint motion from the parties, the court entered an order setting the deadline for Plaintiffs' response to Walmart's motion for summary judgment on April 21, 2023.  (Doc. 28.)  When that date passed with no response, the court ordered Plaintiffs to show cause why Walmart's motion should not be deemed unopposed by May 2, 2023.  (Doc. 29.)  On May 2, 2023, the parties jointly stipulated to extending Plaintiffs' deadline until May 3, 2023, at 12:00 p.m., after which, Walmart's motion would be deemed unopposed.  (Doc. 31.)  Plaintiffs filed their brief in opposition on May 3, 2023.  (Doc. 32.)  No reply brief was filed.  Accordingly, Walmart's motion for summary judgment is now ripe for disposition.

## JURISDICTION AND VENUE

This case was properly removed to this court pursuant to 28 U.S.C. § 1441(a).  The court has diversity jurisdiction in this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete

diversity of citizenship. Furthermore, venue is proper under 28 U.S.C. § 1391 because all of the acts or omissions in this case occurred in Lebanon, Pennsylvania, which is within the Middle District of Pennsylvania.

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

In the motion for summary judgment, Walmart argues that it did not have sufficient notice of the water on the floor of the women's restroom to subject it to liability for Mrs. Steffe's injuries. (Doc. 24, p. 12.) In response, Plaintiffs argue that Walmart had actual notice of the water on the floor because an employee might have caused the water to be on the floor. (Doc. 32, p. 2.) This argument is based on the testimony of the manager at the time, who testified that the maintenance team might have been in the bathroom the night before Mrs. Steffe entered. (*Id.*) Further, Plaintiffs argue, even if Walmart did not cause the water to be on the floor or have notice of it, Walmart breached its duty to inspect their property by not having a formal inspection protocol. (*Id.*)

**A. Walmart did not have notice of the water on the floor.**

To recover on a theory of negligence in a premises liability action under Pennsylvania law, the plaintiff must prove the following four elements: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection

between the conduct and the resulting injury; and (4) actual damages." *Est. of Swift v. Ne. Hosp. of Phila.*, 690 A.2d 719, 711 (Pa. Super. Ct. 1997).[4]

The duty that a landowner owes to someone entering their land "depends upon whether the person entering is a trespasser, licensee, or invitee." *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). The parties agree that Mrs. Steffe was a business invitee of Walmart, as she was there to do grocery shopping. (Doc. 24, pp. 14–15; Doc. 32, p. 8).

A possessor of land will be liable to injuries to their invitees for conditions on the land which are known or discoverable only if the possessor:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

*Swift*, 690 A.2d at 711 (incorporating RESTATEMENT (SECOND) OF TORTS § 343.)

In line with this standard, a landowner cannot be liable for injuries caused by conditions on their property if they did not have actual or constructive notice of the condition. *Loeb v. Allegheny Cnty.*, 147 A.2d 336, 338 (Pa. 1959). A plaintiff can show that the owner had actual notice of the condition by showing that the defendant or their agents caused the condition, or by showing that the condition is

---

[4] Because we are exercising diversity jurisdiction in this case, we must apply state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

one that "frequently recurred." *Farina v. Miggys Corp. Five & Six*, No. 3:09-cv-141, 2010 WL 3024757, at *4 (M.D. Pa. July 29, 2010). But, if the condition is "traceable to persons other than those for whom the owner is ordinarily accountable, there must be actual notice or constructive notice that the condition existed for such a length of time that in the existence of reasonable care it should have been discovered." *Gales v. United States*, 617 F. Supp. 42, 44 (W.D. Pa. 1985), *aff'd* 791 F.2d 917 (3d Cir. 1986).

Determining whether a business owner had constructive notice of a condition on their property consists of examining multiple factors, the most of important of which is the "time elapsing between the origin of the defect or hazardous condition and the accident." *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. Ct. 2001). Other factors include, "[1] the size and physical condition of the premises; [2] the nature of the business conducted there; [3] the probable cause of the condition; and [4] the opportunity a reasonably prudent person would have had to remedy it." *Baynes v. The Home Depot U.S.A., Inc.*, No. 09-3686, 2011 WL 2313658, at *7 (E.D. Pa. June 9, 2011). While determining whether a landowner had constructive notice is often the role of the jury, the court must make the determination "where the evidence adduced requires the jury to resort to 'conjecture, guess or suspicion . . . .'" *Felix v. GMS, Zallie Holdings, Inc.*, 827 F.

9

Supp. 2d 430, 437 (E.D. Pa. 2011), *aff'd* 501 F. App'x 131 (3d Cir. 2012) (quoting *Lanni v. Pa. R.R. Co.*, 88 A.2d 887, 889 (Pa. 1952)).

Walmart argues it did not have constructive notice of the hazardous condition because Mrs. Steffe was unable to provide evidence as to how the water came to be on the floor or how long the water was on the floor. (Doc. 24, p. 12.) Mrs. Steffe argues that Berry's testimony regarding the last time maintenance workers had been in the bathroom creates a genuine issue of material fact as to whether Walmart had notice of the spill. (Doc. 32, p. 2.) Mrs. Steffe further argues that Walmart was still negligent because it failed to have a proper inspection protocol. (*Id.*)

Berry's statement does not create a genuine issue of fact because it is speculation that would not lead a reasonable trier of fact to find in favor of Mrs. Steffe. The statement at issue is: "I thought maybe maintenance was in there, were they mopping, was overnight in there, like, and they-- they maybe didn't mop up some water." (Doc. 32-1, pp. 52–53.) This is Berry's speculation as to where the spill came from. There is no other evidence in the record showing when maintenance workers were last in the women's restroom prior to Mrs. Steffe's fall. This statement merely establishes that it was possible in Berry's mind that the maintenance workers created the spill, but, without more concrete evidence, this statement also equally leaves open the possibility that the spill was created by

10

some other third party just moments before Mrs. Steffe fell. Therefore, to rely on this testimony, the jury would also have to speculate as to the source of the spill.

Mrs. Steffe also attempts to show a genuine issue of material fact by arguing that Walmart had actual notice because Walmart received complaints about the bathroom floor frequently. (Doc. 32, p. 5.) To support this argument, Mrs. Steffe points to Berry's testimony that associates would report that the "floor needed attention in the bathroom[]" approximately once or twice per week. (Doc. 32-1, pp. 58–59.) Berry testified to complaints of water being on the bathroom floor occurring once to twice per month. (*Id.*)

In *Markman v. Fred P. Bell Stores Co.*, 132 A. 178, 180 (Pa. 1926), the Pennsylvania Supreme Court held that a business owner was liable for their customer's injuries when the customer slipped and fell on "fat meat and cabbage leaves" which had been washed onto the street and accumulated in front of the door. Additionally, at trial, the plaintiff produced evidence that this condition was frequently brought to the owner's attention and even brought to the attention of the police. *Id.* The court found that while "[t]he mere presence of such refuse . . . does not itself show negligence, for this condition may temporarily arise in any store of this character, though the proprietor has exercised due care," the frequent complaints about the condition, rising to the level of involving the police, was sufficient for the jury to find that defendant owed a duty to the plaintiff. *Id.*

Courts have since construed *Markman* to stand for the principle that "[w]hen reasonable preventative measures and remedies are enacted, liability should not follow faultless 'accidents' in the purest sense of the word. When a dangerous floor becomes the status quo, however, it is fair to infer actual notice." *Farina*, 2010 WL 3024757 at *7 (citing *Markman*, 132 A. at 180; *Martino v. Great Atl. & Pac. Tea Co.*, 213 A.2d 608, 610 (Pa. 1965)).

The facts in this case differ from *Markman* and the cases applying it because the wet floor in the bathroom was not so frequent as the condition in *Markman*. Berry testified that Walmart received notice of water on the floor approximately once or twice per month. (Doc. 32-1, pp. 58–59.) She also testified that upon receiving these complaints, Walmart's protocol was for a team member to go address the situation. (*Id.* at 56.) There is no evidence in the record showing that wet floors were the "status quo" at Walmart. Further, there is evidence showing that Walmart had procedures in place to address reports of wet floors in the bathroom. Because Walmart had reasonable preventative measures in place and the wet floor problem was not the status quo, the court will not infer that Walmart had actual notice of the spill that caused Mrs. Steffe's fall. *See Martino*, 213 A.2d at 234; *Farina*, 2010 WL 3024757 at *7; *Pickett v. Target Corp.*, No. 3:20-237, 2021 WL 5163220, at *4 (M.D. Pa. Nov. 5, 2021).

With this discussion in mind, the court will now determine whether there are sufficient facts showing Walmart had constructive notice of the spill to survive summary judgment. There are no facts in the record as to how the spill happened. Similarly, there are no facts as to how long the spill had been present before Mrs. Steffe's fall. There is no evidence as to any tracks through the water or the presence of dust, both of which would point to the water being there for a longer amount of time. Without these crucial pieces of evidence, Mrs. Steffe will be unable to prove at trial that Walmart had constructive notice of the water. Accordingly, Mrs. Steffe cannot prove that Walmart owed her a duty with respect to the spill, and her negligence claim fails.

Finally, to the extent that Mrs. Steffe argues that Walmart's bathroom inspection policy is insufficient, this argument goes towards Walmart's breach of duty to exercise reasonable care as to the maintenance of their store. *Felix*, 827 F. Supp. at 440 (finding that inquiry into the sufficiency of store policies is only relevant after establishment of notice of the hazardous condition) (citing *Swift*, 690 A.2d at 722). In order to determine if Walmart's bathroom inspection protocols are sufficient, the court must first have found that Walmart owed a duty to Mrs. Steffe. Walmart does not "owe such a duty unless there was sufficient constructive notice of the hazardous condition." *Id.* As noted above, Walmart did not have notice of the water on the floor and did not owe a duty towards Mrs. Steffe

regarding that condition. In light of this determination, Walmart's bathroom inspection protocols are irrelevant. *Id.*

In conclusion, there is not sufficient evidence in the record of a genuine issue of material fact regarding whether Walmart had notice of the hazardous condition such that they had a duty to exercise reasonable care to remedy it. Thus, the court will grant Walmart's motion for summary judgment on Mrs. Steffe's negligence claims against Walmart.

### B. Judgement will be granted in Walmart's favor on Mr. Steffe's loss of consortium claim.

Although neither party discusses the issue, the court will grant judgment in favor of Walmart on Mr. Steffe's loss of consortium claim. Mr. Steffe's claim is entirely derivative of Mrs. Steffe's negligence claims against Walmart. Accordingly, because the court grants summary judgment in favor of Walmart on Mrs. Steffe's negligence claims, the court will also do so as to Mr. Steffe's loss of consortium claim. *Murray v. Com. Union Ins. Co.*, 782 F.2d 432, 438 (3d Cir. 1986).

**CONCLUSION**

For the foregoing reasons, the court will grant Walmart's motion for summary judgment. (Doc. 24.) An appropriate order will issue.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated: September 25, 2023